## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DARYL BOBO,                          )
                                     )
      Petitioner,              )
                                     )        No. 2:17-cv-02425-TLP-tmp
v.                                   )
                                     )
MIKE PARRIS,                         )
                                     )
      Respondent.              )

## ORDER OF DISMISSAL, ORDER DENYING CERTIFICATE OF APPEALABILITY, ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Daryl Bobo[1] petitions for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.)  Petitioner raises issues in two categories: (1) whether the procedural default doctrine bars the claims, and (2) whether the state court identified and applied the correct federal legal principles.  For the reasons below, the Court **DISMISSES** the petition.

### TENNESSEE STATE COURT PROCEDURAL HISTORY

In early April 2013, a Shelby County Criminal Court jury convicted Petitioner of one count of possession of cocaine with intent to sell (Count One), one count of possession of cocaine with intent to deliver (Count Two), one count of possession of marijuana with intent to sell (Count Three), and one count of possession of marijuana with intent to deliver (Count Four), all in a drug free school zone.  (ECF No. 9-1 at Page ID 104.)  In early June 2013, the trial court

---

[1] Bobo is in state custody with the Tennessee Department of Correction and it has assigned him register number 149761.  Tennessee is housing him at the Morgan County Correctional Complex in Wartburg, Tennessee.

sentenced Petitioner as a Range III persistent offender to sixty years in prison for the cocaine conviction and twelve years in prison for the marijuana conviction, and that he serve them concurrently.[2]  (*Id.* at PageID 109–12.)  Petitioner's motion for new trial, filed on June 25, 2013, challenged the sufficiency of the evidence.  (*Id.* at PageID 113.)  The trial court denied the Motion for New Trial.  (*Id.* at PageID 115.)  Petitioner appealed timely.  (*Id.* at PageID 117.) The Tennessee Court of Criminal Appeals ("TCCA") affirmed.  *State v. Bobo*, No. W2013-02008-CCA-R3-CD, 2014 WL 3954066 (Tenn. Crim. App. Aug. 13, 2014), *perm. app. denied* (Tenn. Dec. 19, 2014).

On March 3, 2015, Petitioner filed a *pro se* petition in Shelby County Criminal Court under the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101–122.  (ECF No. 9-15 at PageID 506–15.)  Petitioner then amended his petition.[3]  (*Id.* at PageID 516–20.) The court appointed counsel to represent him.  (*Id.* at PageID 521.)  On September 18, 2015, counsel amended the petition for the second time.  (*Id.* at PageID 522–29.)  The post-conviction court conducted an evidentiary hearing and denied relief in an order entered on February 16, 2016.  (*Id.* at PageID 531–41.)  The TCCA affirmed.  *Bobo v. State*, No. W2016-00477-CCA-R3-PC, 2016 WL 6803176, at *5 (Tenn. Crim. App. Nov. 16, 2016), *perm app. denied* (Tenn. Feb. 28, 2017).

The TCCA opinion on direct appeal summarized the evidence presented at trial:

Richard Phillips, a detective with the Memphis Police Department Organized Crime Unit, testified that on March 4, 2010, he was patrolling a "hotspot" for crime and drug transactions located between a BP station and a Burger King when he saw appellant talking to two other males.  Detective Phillips knew one of the other males due to prior interactions.  He observed appellant and one of the other individuals conduct a "hand-to-hand transaction," referring to a drug transaction.

---

[2] Counts Two and Four merged with Counts One and Three. (ECF No. 9-6 at PageID 414.)
[3] The first amended petition is not file stamped and appears to have been filed simultaneously with the original petition.

Detective Phillips explained that he pulled into the parking lot of the BP station and approached the three men; however, appellant began walking away from the other two men toward a nearby Kroger.  While Detective Phillips spoke with the two remaining men, he radioed other officers to inform them of the situation and described appellant's appearance.  While Detective Phillips checked for arrest warrants and patted-down the two men in his presence, appellant "circled wide around [Detective Phillips] and went all the way behind [him], and then came back up over on the Burger King lot."  Detective Phillips testified that he updated his partners regarding appellant's location and that the other officers arrived as appellant entered the Burger King.  The other officers followed appellant inside.

Detective Phillips explained that he did not initially pursue appellant and instead remained with the two other suspects because he wanted to wait for the other officers to arrive in case appellant had a weapon or attempted to flee.  Regarding his observation of the hand-to-hand transaction, Detective Phillips stated that the key indicators that a drug transaction was occurring were that appellant looked over his shoulder while he was talking to the other two men, the men stood close together, and the two men exchanged something in their hands.  Detective Phillips testified that while he could not see exactly what was exchanged, based on his fourteen years of experience, those actions were indicative of a drug transaction. Detective Phillips explained that it was uncommon for officers to see the drugs themselves during a transaction "on the street level," meaning that the narcotics are being sold to the final consumer or user.

Detective Phillips testified that he saw the other officers bring appellant out of the Burger King and that he saw the six rocks of crack cocaine and thirty-seven baggies of marijuana confiscated from appellant.  He stated that the items were inside a black bag.  Detective Phillips stated that based on his experience, drugs that are packaged for resale are normally broken down into small amounts, like small rocks of crack cocaine or small baggies of marijuana.  Detective Phillips also explained that there was a pawn shop between the Burger King where appellant was apprehended and Northwest Prep Academy, a Memphis city school.[4]

During cross-examination, Detective Phillips agreed that when he first saw appellant, appellant had his back to Detective Phillips.  Detective Phillips conceded that he did not arrest the other two individuals involved and that he did not know if they possessed any drugs.  Detective Phillips also conceded that he did not know if they bought drugs from or sold drugs to appellant and that he had observed a transaction that he only suspected was a narcotics transaction. Detective Phillips agreed that he did not know when appellant bought the drugs in question.

---

[4] Because chain of custody is not an issue on appeal, we have omitted all testimony about that issue.

Gilbert Goodwin, a detective with Memphis Police Department Organized Crime Team, stated that on March 4, 2010, he responded to Detective Phillips' call regarding appellant.  Detective Goodwin explained that he and two other detectives arrived at the Burger King and saw appellant enter the restaurant.  They followed appellant inside.  Appellant immediately entered the restroom, and the detectives followed appellant into the facility.  Detective Goodwin explained that after entering the restroom, he observed appellant pull a black plastic bag out of his right front pocket while standing at a urinal.  One of the other detectives confiscated the bag and handed it to Detective Goodwin.  Detective Goodwin stated that the odor of marijuana emanated from the bag, so he opened the bag and saw marijuana inside.  Detective Goodwin explained that he gave the bag to the other detectives and handcuffed appellant before removing him from the restroom.  The detectives then radioed Detective Phillips to join them in the Burger King parking lot.  After Detective Phillips arrived, the detectives searched appellant, finding $376; placed the confiscated narcotics on the hood of Detective Phillips' car; and put appellant in the back seat of Detective Phillips' car.  Detective Goodwin explained that the black bag taken from appellant contained thirty-seven bags of marijuana and six rocks of crack cocaine.

During cross-examination, Detective Goodwin conceded that he did not know appellant personally and that he did not know from where the money in appellant's possession originated.

Michael Gibbs, Jr., a patrolman with the Memphis Police Department, testified that on March 4, 2010, he was working with the Organized Crime Unit and that he responded to Detective Phillips' broadcast regarding appellant.  Officer Gibbs explained that he saw appellant enter the Burger King and that he and the other two officers followed appellant into the restaurant.  They found appellant in the Burger King restroom standing next to a urinal.  As they watched appellant, appellant removed a black bag from his left pocket.[5]  Officer Gibbs stated that he then detained appellant to prevent appellant from disposing of any evidence in the urinal.  Officer Gibbs recalled that he handed the black bag to Officer Goodwin and then placed appellant in handcuffs.  Officer Gibbs testified that he and the other two officers then escorted appellant outside, patted appellant down, seized $376 in cash, and examined the contents of the black bag, finding thirty-seven bags of marijuana and six rocks of crack cocaine.

Officer Gibbs explained that there were often problems with drugs near Northwest Prep Academy because "dealers like to sit right there and sell the dope to the kids as they come out of school."  He stated that the drugs were usually "packaged proportionally for the kids, small quantities, nothing large because the kids can't afford that."  Officer Gibbs explained that when he was working undercover buying drugs, he normally bought small quantities during each

---

[5] We recognize the inconsistency in the officers' testimonies about the pocket from which appellant retrieved the black bag.

transaction.  He also stated that from his experience as an undercover officer, it was uncommon for crack cocaine users to use both crack cocaine and marijuana and that if crack cocaine users had marijuana, it was usually "seeds and residue, nothing."  Officer Gibbs also asserted that it was uncommon for a crack cocaine user to possess both crack and large amounts of money at the same time and that it was uncommon for a crack user to possess multiple crack cocaine rocks at one time.

During cross-examination, Officer Gibbs conceded that he never saw appellant speak to anyone else prior to appellant's arrest or participate in a narcotics transaction.

John Scott, Jr., an agent with the Tennessee Bureau of Investigation Nashville Crime Laboratory, testified that he examined and tested the narcotics found on appellant and determined that the items were 1.2 grams of cocaine base, also referred to as crack cocaine, and 33.5 grams of marijuana.

Jeffrey Allen Garey, an officer with the Memphis Police Department Crime Scene Investigation Unit, testified that he measured the distances between Northwest Prep Academy and the relevant locations in this case.  Officer Garey created a diagram of the numerous measurements that he took at the scene, which was entered as an exhibit.  Of particular relevance to this case were the following measurements:  (1) the distance from the corner of Cleveland Street and Poplar Avenue, where the BP was located, to the entrance of the school was approximately 700 feet and (2) the distance from the half-way point between Burger King and the BP station, where the transaction occurred, to the entrance of the school was approximately 680 feet.

Appellant and the State stipulated that Northwest Prep Academy was a public secondary school pursuant to Tennessee Code Annotated section 39–17–432.

*State v. Bobo*, 2014 WL 3954066, at *1–3.

The TCCA opinion on post-conviction appeal summarized the evidence presented at the

post-conviction hearing:

On March 3, 2015, the Petitioner filed a pro se petition for post-conviction relief alleging numerous constitutional violations, including ineffective assistance of trial counsel.  Shortly thereafter, the Petitioner filed a pro se amended petition for post-conviction relief, specifically alleging that trial counsel "failed to adequately investigate [his] case" and "failed to adequately confer with [him] about the effect that going to trial would have on [his] sentencing."

An attorney was appointed to represent the Petitioner, and she filed a second amended petition for post-conviction relief.  The second amended petition

alleged several instances of ineffective assistance of trial counsel, including that trial counsel failed to file a suppression motion, failed to "properly investigate," failed to "review [the] Petitioner's legal rights before he made the decision to go to trial" and to sufficiently inform him of the "consequences [of] choosing to go to trial," and failed to "properly communicate with [the] Petitioner and prepare him for trial."

The Petitioner testified at the post-conviction hearing that he and his trial counsel "stayed arguing" about his case. The Petitioner claimed that he would discuss his case with trial counsel and ask trial counsel to investigate certain things or file specific motions but that trial counsel would later say that "he didn't remember anything" about those discussions. The Petitioner also claimed that trial counsel would only meet with him at his court dates or the day before his court dates. According to the Petitioner, trial counsel never met with him while he was in jail, never discussed trial strategy or possible defenses with him, never discussed the sentencing range he faced if convicted, never provided him with copies of the discovery materials, never responded to any of his letters, never filed any pretrial motions, and never investigated his case.

The Petitioner claimed that trial counsel did not convey any plea offers from the State to him and that he first heard about the State's offer of a twenty-five-year sentence to be served at one hundred percent from the trial court on the day his trial was scheduled to begin. According to the Petitioner, he was allowed to discuss the offer with trial counsel, and trial counsel told him that if he accepted the offer, he would receive a twenty-five-year sentence to be served at thirty-five percent. The Petitioner also claimed that trial counsel listed his sentence as twenty-five years at thirty-five percent on the "guilty plea paperwork." The Petitioner testified that he believed trial counsel was confused about the sentence the State had offered him.

The Petitioner claimed that during his plea submission hearing, the trial court rejected his guilty plea because he "was confused" about the sentence he was to receive. The Petitioner testified that he would have accepted the offer of a twenty-five-year sentence to be served at one hundred percent rather than go to trial. The Petitioner explained that when questioned by the trial court, he insisted his plea agreement was for thirty-five percent service of his sentence because that was what trial counsel had told him and that he ultimately did not accept the offer for one hundred percent service because he "was confused." However, the Petitioner repeatedly stated that he "wanted to prove [his] innocence" at trial because he "did not do" what the arresting officers said he did. The Petitioner further claimed that he would not have attempted to enter a plea agreement if trial counsel had brought "up all [the] evidence to prove [his] innocence" but that trial counsel told him prior to trial that "he wasn't ever trying to get [any] evidence" to help the Petitioner's defense.

Trial counsel testified that the District Public Defender's Office was initially appointed to represent the Petitioner and that he was subsequently appointed after the relationship between the Petitioner and his first attorney deteriorated. Trial counsel testified that he met with the Petitioner on numerous occasions both prior to court appearances and in jail, that he reviewed and explained the indictment to the Petitioner, and that he discussed trial strategy with the Petitioner. Trial counsel admitted that he did not provide the Petitioner with a copy of the discovery materials, but trial counsel stated that he reviewed the discovery materials with the Petitioner in detail. Trial counsel also testified that he filed pretrial motions on behalf of the Petitioner, including a motion to suppress. However, there was no hearing on the suppression motion because trial counsel did not believe that "there was [anything] to suppress."

Trial counsel admitted that he and the Petitioner "argued quite a bit about this case" because the Petitioner insisted that "nobody saw him selling any drugs" while trial counsel tried to explain to him that he had been charged with possessing drugs within 1,000 feet of a school. Trial counsel recalled that the Petitioner wanted him to get video surveillance footage from the Burger King to show that there had been no drug transaction. Trial counsel testified that he had the investigator from the District Public Defender's Office attempt to get the surveillance footage but that "the tapes were not available" by the time he had been appointed. Trial counsel also testified that he personally measured the distance from the Burger King to the school to see if it was within 1,000 feet. According to trial counsel, he brought sketches and photographs to the Petitioner "to show him" the school zone. Trial counsel further testified that he spoke with the State's witnesses and discussed with the Petitioner what he anticipated their testimony would be.

Trial counsel testified that the State's offer from the beginning of the case was for a twenty-five-year sentence to be served at one hundred percent and that he conveyed this offer to the Petitioner. Trial counsel denied ever telling the Petitioner that the offer was for thirty-five percent service. Trial counsel stated that he worked his way up the chain of command of the prosecutor's office, ultimately taking the issue up to the District Attorney General, but that the State's offer never changed. Trial counsel further testified that he advised the Petitioner to accept the State's offer given the sentencing exposure the Petitioner faced if convicted at trial but that the Petitioner's attitude was that "he was not going to take [twenty-five] years for selling drugs."

Trial counsel explained that the trial court had a rule that it would not accept a guilty plea if a case had been scheduled for trial. However, trial counsel was able to convince the trial court to waive that rule and to accept the Petitioner's plea agreement on the day his trial was scheduled to start. However, after being allowed to speak with the Petitioner and reviewing the plea agreement with him, the Petitioner feigned that he believed that his plea agreement was for thirty-five percent service when he was questioned by the trial court. Trial

counsel testified that he believed the Petitioner's "attitude and demeanor" during the trial court's questioning were what caused the trial court to reject the Petitioner's plea agreement.  Trial counsel explained that the Petitioner "insisted on arguing about what he was charged with" and that he "wasn't selling [any] drugs."

On February 16, 2016, the post-conviction court entered an order denying the petition.  The post-conviction court found that the Petitioner had failed to prove his factual allegations that trial counsel had not adequately investigated his case and prepared for trial by clear and convincing evidence.  With respect to the proposed plea agreement, the post-conviction court accredited trial counsel's testimony that he conveyed the State's plea offer for twenty-five years to be served at one hundred percent and that he did not tell the Petitioner that his service would be at thirty-five percent.  The post-conviction court further noted that the trial court attempted several times to voir dire the Petitioner about his plea agreement and that in addition to claiming that the offer was for thirty-five percent service, the Petitioner "feign[ed] confusion about his right to testify" and refused to "answer essential questions in a straightforward manner."  The post-conviction court concluded that the Petitioner's "attempts to feign confusion during [the voir dire] process were obvious" and that he "knew exactly what the consequences of a guilty plea or his conviction at trial were."

*Bobo v. State*, 2016 WL 6803176, at *1–3.

## **LEGAL STANDARDS**

Federal courts have authority to issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

## I.     **Exhaustion and Procedural Default Review**

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting to the state courts the same claim it seeks the federal court to address under 28 U.S.C. § 2254(b) and (c).  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  For a state prisoner to exhaust state

remedies, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). The petitioner must "fairly present" each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state does not provide for state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court after the TCCA has denied a claim of error, at which point "the litigant shall be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

Courts recognize a procedural default doctrine ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal quotation marks and citation omitted)).[6] In general, a federal court "may only treat a state court order as

---

[6] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60–61 (2009)). "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise

enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If the procedural default doctrine bars a petitioner's claim at the state level based on an independent and adequate procedural rule, the petitioner must show cause to excuse his failure to present the claim and show actual prejudice stemming from the constitutional violation or that the federal court's failure to review the claim will lead to a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show the latter, a petitioner must prove a constitutional error has probably caused the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

## II.    Merits Review

Under Section 2254(d), where state courts have decided a claim on the merits, federal court should only grant a habeas petition if the state court's resolution of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

---

of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 54.) (internal quotation marks and citations omitted).

Under § 2254(d)(1) federal court review is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 182. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or when it "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). That said, an "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The state court's application of clearly established federal law must be "objectively unreasonable" for the federal court to then issue a writ. *Id.* at 409. The habeas court may not issue the writ merely because, "in its independent judgment," it determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411).

With that in mind, there is little case law addressing whether, under § 2254(d)(2), a decision was based on "an unreasonable determination of the facts." In *Wood v. Allen*, the Supreme Court held that a state-court factual determination is not "unreasonable" just because the federal habeas court would have reached a different conclusion.[7] 558 U.S. 290, 301 (2010). In *Rice v. Collins*, the Court explained, "[r]easonable minds reviewing the record might

---

[7] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." 558 U.S. at 299. The Court found it unnecessary to reach that issue and left it open "for another day." *Id.* at 300–04 (citing *Rice v. Collins*, in which the Court recognized it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply. 546 U.S. 333, 339 (2006)).

disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."  546 U.S. 333, 341–42 (2006).

In like manner, the Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable."  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).  What is more, it emphasized that, under § 2254(e)(1), the federal court presumes the state court's factual determination is correct absent clear and convincing evidence to the contrary.  *Id.*  A federal court will not overturn a state court adjudication on factual grounds unless objectively unreasonable considering the evidence presented during the state court proceeding.  *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

## III.    Ineffective Assistance of Counsel Review

The standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) control the analysis of a claim that counsel's ineffective assistance has deprived a defendant of his Sixth Amendment right to counsel.  To succeed on this claim, a movant must demonstrate two elements: 1) that counsel's performance was deficient, and 2) "that the deficient performance prejudiced the defense."  *Id.*  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance."  *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[8]  And "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  So "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Harrington*, 562 U.S. at 104.  "But *Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam). "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

And so, when reviewing an ineffective assistance of counsel claim, federal courts give even more deference to a state-court decision under 28 U.S.C. § 2254(d):

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)].  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at 123, 129 S. Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.

On direct appeal, a criminal defendant is also entitled to the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To that end,  counsel's failure to raise a

---

[8] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel performed deficiently.  *Strickland*, 466 U.S. at 697.

nonfrivolous issue on appeal does not constitute *per se* ineffective assistance of counsel, as "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). And so federal courts use the *Strickland* standards to evaluate claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Smith v. Murray*, 477 U.S. at 535–36 (failure to raise issue on appeal). To show that appellate counsel was ineffective, a prisoner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. at 285 (citation omitted).[9]

---

[9] The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was the appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) (citation omitted).

An appellate counsel's ability to choose those arguments that are more likely to succeed is "the hallmark of effective appellate advocacy." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011) (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003)). So it is difficult to show that appellate counsel was deficient for raising one issue, rather than another, on appeal. *See id.* "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Id.* As a result, Defendant must show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

At the same time however, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (internal citations omitted). This means that attorney error cannot create "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted). Because the State has no constitutional obligation to ensure that competent counsel represents a prisoner at the post-conviction stage, the petitioner bears the risk of attorney error. *Id.* at 754.

That said, in 2012, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), recognizing a narrow exception to the rule in *Coleman*, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." *Martinez*, 566 U.S. at 17. In those cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was

ineffective." *Id.* What is more, the Supreme Court also emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Id.* To satisfy the requirements to excuse a procedural default under *Martinez*, the prisoner must show:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (emphasis and alterations in original).

In *Martinez*, the Supreme Court considered an Arizona law that did not permit defendants to raise ineffective assistance claims on direct appeal. *Martinez*, 566 U.S. at 4. In the Supreme Court's later decision in *Trevino*, 569 U.S. at 429, the Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." In essence, *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default. In the end, *Martinez* and *Trevino* apply to Tennessee prisoners. *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014). The court will now consider Petitioner's claims here.

## ANALYSIS OF PETITIONER'S FEDERAL HABEAS CLAIMS

In his § 2254 petition, Petitioner raises these ineffective assistance of counsel claims:

1.    Trial counsel provided ineffective assistance by failing to adequately explain the terms of the plea offer (ECF No. 1 at PageID 15–16);

16

2.      Trial counsel provided ineffective assistance by failing to adequately
        cross-examine the arresting officers (*id.* at PageID 16–17);

3.      Trial counsel provided ineffective assistance by failing to prepare
        Petitioner for trial (*id.* at PageID 17); and

4.      Trial counsel provided ineffective assistance by failing to request jury
        instructions on the lesser-included offenses of attempt and facilitation.
        (*Id.* at PageID 20, 27–29.)

Petitioner argued three of these four claims to the TCCA in his post-conviction appeal

and the TCCA addressed them in the appellate opinion.  The TCCA noted:

> The Petitioner contends that his trial counsel was ineffective (1) in failing
> to adequately explain to him the terms of a plea offer made by the State; (2) in
> failing to adequately meet with and prepare him for trial; and (3) for failing to
> adequately cross-examine the State's witnesses.  Following our review, we affirm
> the judgment of the post-conviction court.

*Bobo v. State*, 2016 WL 6803176, at *1.  Petitioner never presented his fourth issue here to the

Tennessee courts.

## I.      Issues One Through Three

To summarize the first three claims, Petitioner alleges trial counsel provided ineffective

assistance by failing to (1) adequately explain the plea offer (ECF No. 1 at PageID 15–16); (2)

adequately cross-examine the arresting officers (*id.* at PageID 16–17); and (3) prepare Petitioner

for trial.  (*Id.* at PageID 17.)  Respondent counters that these claims are barred by the

procedurally default doctrine because Petitioner did not comply with the state court appellate

rules.  (ECF No. 10 at PageID 669.)

The TCCA found that Petitioner waived these claims, and alternatively found that Issues

One and Three lacked merit:

> The Petitioner contends that the post-conviction court erred in denying his
> petition for post-conviction relief.  The Petitioner argues that trial counsel was
> ineffective in failing to adequately explain to him the terms of the plea offer made

by the State and in failing to adequately meet with and prepare him for trial. The Petitioner further argues that trial counsel was ineffective for failing to adequately cross-examine the State's witnesses. The State responds that trial counsel's performance was not deficient and that the Petitioner has failed to show any prejudice arising from trial counsel's performance.

At the outset, we note that the Petitioner has submitted an inadequate brief to this court. The Petitioner's brief contains no recitation of the testimony at the post-conviction hearing and only conclusory references to that hearing. As such, we may treat these issues as being waived. *See* Tenn. R. Crim. Ct. App. 10(b) ("Issues which are not supported by . . . appropriate references to the record will be treated as waived in this court"); *see also* Tenn. R. App. P. 27(a)(6) (providing that the brief of the appellant "shall contain" a "statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record").

Waiver notwithstanding, post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40–30–103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368–72 (1993).

. . . .

Here, the post-conviction court accredited trial counsel's testimony that he informed the Petitioner of the State's offer of twenty-five years' incarceration to be served at one hundred percent, that he unsuccessfully worked to get the Petitioner a lesser offer, that he met with the Petitioner numerous times prior to trial, that he reviewed the discovery materials and discussed trial strategy with the Petitioner, and that he never told the Petitioner that the State's offer included thirty-five percent service of his sentence. Nothing in the record preponderates against these findings by the post-conviction court. With respect to the Petitioner's claim that trial counsel failed to adequately cross-examine the State's witnesses, this issue was not raised in his petitions for post-conviction relief or at the post-conviction hearing. Issues raised for the first time on appeal are considered waived. *See Charles Orlando Fields v. State*, No. W2003–02051–CCA–R3–PC, 2004 WL 1405012, at *5 (Tenn. Crim. App. June 23, 2004). Accordingly, we conclude that the post-conviction court did not err in denying the petition.

18

*Bobo v. State*, 2016 WL 6803176, at *3–4.

Under Rule 10(b) of the Rules of the Tennessee Court of Criminal Appeals, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." The Sixth Circuit has confirmed that this rule is "an independent and adequate state ground for denying [a] claim." *Middlebrooks v. Bell*, 619 F.3d 526, 538 (6th Cir. 2010), *vacated on other grounds sub nom. Middlebrooks v. Colson*, 566 U.S. 902 (2012).

Because the state court found Petitioner waived these claims under this procedural bar, they are barred by the procedural default doctrine for federal habeas review even though the state court conducted an alternative analysis of the merits. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (State courts "[n]eed not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *accord Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000) ("*Harris* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground."); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) ("Coe claims that the court of appeals' alternative holding—that he would lose on the merits anyway—means that he is not procedurally barred, because the state courts in fact reached the merits. This argument fails due to the Supreme Court's decision in *Harris* . . . .").

The TCCA enforced the procedural rule of waiver on Issue Two and conducted an alternative analysis of the merits on Issues One and Three.[10]  The TCCA's alternative analysis is not contrary to or an unreasonable application of clearly established federal law.  Petitioner fails to explain how the TCCA's decision differed from *Strickland*.  Instead Petitioner repeats the same argument rejected by the TCCA in his post-conviction appeal.  (ECF No. 1 at PageID 15–17; ECF No. 9-17 at PageID 608–10.)

And he has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Petitioner has not satisfied his burden of showing that the decision was objectively unreasonable.  Also Petitioner fails to provide either argument or evidence that refutes the presumption of correctness this Court gives the state court's factual determination.  Federal habeas courts accord a state court's factual findings a presumption of correctness absent clear and convincing evidence to the contrary.  28 U.S.C. §§ 2254(d)(2), 2254(e)(1).

Based on this Court's review of the transcript of Petitioner's post-conviction hearing, (ECF No. 9-16) and the transcript of Petitioner's trial (ECF No. 9-2), the TCCA's determination of the facts was not an unreasonable one.  The proof of Petitioner's guilt was overwhelming.  After the court sentenced him to sixty years, Petitioner regrets his decision to go to trial rather than accept the plea offer of twenty-five years at 100 percent.  The trial court and defense counsel clarified the plea offer repeatedly.  (ECF No. 9-15 at PageID 535–37.)  Petitioner's

---

[10] Petitioner contends that ineffective assistance of post-conviction counsel should excuse the waiver and default of these issues.  The default occurred in the post-conviction appeal when post-conviction appellate counsel filed an inadequate brief and raised the second issue for the first time on appeal.  *Martinez* does not encompass claims that post-conviction appellate counsel was ineffective.  *See Martinez*, 566 U.S. at 15 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.")

testimony at the post-conviction hearing was implausible.  This Court therefore finds it appropriate to defer to the state court decision on this issue.

Petitioner waived Issues One-Three and he is barred from pursuing them by the procedural default doctrine.  These claims are therefore **DENIED**.  Alternatively, Issues One and Three lack merit and are **DENIED**.

## II.    Issue Four

As for the remaining issue, Petitioner contends counsel performed deficiently by failing to request jury instructions on the lesser-included offenses of attempt and facilitation.  (ECF No. 1 at PageID 20, 27–29.)  Respondent replies that this issue is barred by procedural default, and the default should not be excused under *Martinez* because the claim is not substantial.  (ECF No. 10 at PageID 673.)

It is possible for state post-conviction counsel to be so ineffective as to establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that his trial counsel was constitutionally ineffective.  *Sutton*, 745 F.3d at 787.  To qualify as "substantial" under *Martinez*, a claim must have "some merit" based on the controlling standard for ineffective assistance of counsel.  *Martinez*, 566 U. S. at 14.

The trial judge here instructed the jury on the lesser-included offenses of simple possession and casual exchange.  (ECF No. 9-4 at PageID 349, 355.)  Petitioner's trial counsel did not request instructions on other lesser-included offenses—attempt and facilitation.  (ECF No. 9-2 at PageID 256–63.)

When Petitioner committed this offense, sometimes Tennessee considered facilitation and attempt lesser-included offenses of possession of a controlled substance.  Tenn. Code Ann. § 40-18-110(f) (2010); *State v. Burns*, 6 S.W.3d 453, 466–67 (Tenn. 1999); *see State v. Nash*, 104

S.W.3d 495, 499–501 (Tenn. 2003) (discussing facilitation of possession of marijuana with intent to deliver).  That said, a Tennessee trial court need not give a jury instruction on a lesser-included offense unless that "charge is justified by the evidence."  *State v. Page*, 184 S.W.3d 223, 228 (Tenn. 2006) (citing *State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001).  In making that determination, a trial court must find "that: '(1) reasonable minds could accept the offense as lesser-included; and (2) the evidence is legally sufficient to support a conviction for the lesser-included offense.'"  *Id.*  (quoting *State v. Wilson*, 92 S.W.3d 391, 394 (Tenn. 2002)).

Review of the trial transcript here confirms that the trial court correctly found that the evidence in the case did not justify including instructions for the lesser included offenses of attempt and facilitation.  (ECF No. 9-2.)  Yet Petitioner continues to argue the basis for his charges was the hand-to-hand transaction observed by Detective Phillips.  (*Id.* at PageID 131-32, 166–67.)  Detective Phillips admitted he could not testify that Petitioner sold any drugs to the two individuals Phillips detained or that Petitioner bought any drugs from the detained individuals.  (*Id.* at PageID 191.)  Detectives Goodwin and Gibbs testified that a black plastic bag they observed Petitioner pull from his pants pocket in the Burger King restroom contained drugs.  (*Id.* at PageID 199, 202, 231, 233.)  Petitioner was charged with possession with intent to deliver  33.5 grams of marijuana and 1.2 grams of crack cocaine.  (*Id.* at PageID 213, 215.)

The State's proof went beyond mere attempt to possess.  It showed that Petitioner possessed the drugs.  The question the jury had to decide then was whether Petitioner possessed those drugs with intent to sell or deliver them.  "[W]here the evidence clearly establishes the completion of the crime, it is unnecessary for the trial court to charge the jury as to attempt. . . ."  *State v. Banks*, 271 S.W.3d 90, 127 (Tenn. 2008) (citing *State v. Robinson*, 146 S.W.3d 469, 487 n.7 (Tenn. 2004)).  Of course, Petitioner could not have facilitated his own possession of the

drugs.  Facilitation is a theory of vicarious criminal responsibility, requiring one to furnish substantial assistance to another's commission of a crime.  *See* Tenn. Code Ann. § 39-11-403.

All in all, Petitioner cannot show that, had counsel requested that the trial court instruct the jury on these lesser-included offenses, the trial court would have given the instructions.  And so trial counsel did not perform deficiently by failing to request instructions unsupported by the proof.  By extension, post-conviction counsel did not perform deficiently by failing to raise a baseless claim.  Simply put, Petitioner has failed to establish deficient performance and has not satisfied the requirements to overcome the procedural default of this issue.  The Court therefore **DENIES** the petition on Issue Four.

The issues raised in this petition are barred by procedural default and alternatively, lack merit.  The Court therefore **DISMISSES** the petition **WITH PREJUDICE**.  The Court will enter Judgment for Respondent.

## ANALYSIS OF APPELLATE ISSUES

Petitioner has no absolute entitlement to appeal a district court's denial of a § 2254 petition.  *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  The Court should issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.  Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must convey the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)–(3).  A petitioner makes "substantial showing" when he shows "reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

Here, there can be no question that the claims in this petition lack merit and are barred by procedural default.  Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court **DENIES** a COA.

For the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith.  The Court therefore **CERTIFIES**, under Fed. R. App. P. 24(a), that any appeal here would not be taken in good faith and **DENIES** leave to appeal in forma pauperis.[11]

**SO ORDERED**, this 25th day of August 2020.

s/Thomas L. Parker _____
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[11] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis and supporting affidavit in the Sixth Circuit within 30 days of the date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).